UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHOICE CAUSEY,

Plaintiff,                                    Case No. 16-cv-12747

v.                                            UNITED STATES DISTRICT COURT
                                              JUDGE
CITY OF BAY CITY, ET AL.                      GERSHWIN A. DRAIN

Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [23]**

**I. INTRODUCTION**

Presently before the Court is Defendants' Motion for Summary Judgment.

Plaintiff commenced suit against Defendants alleging equal protection and/or

retaliation violations under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Plaintiff

Choice Causey commenced suit against the City of Bay City, Michael Cecchini,

the Public Safety Director, Tom Pletzke, the Acting Director of the Bay City

Public Safety Department, and City Manager Richard Finn. For the reasons

discussed herein, the Court will grant in part and deny in part Defendants' Motion

for Summary Judgment.

## II. FACTUAL BACKGROUND

On December 24, 2002, Plaintiff Choice Causey filed a complaint against the Bay City Police Department and Thomas Pletzke. Complaint, Causey v. City of Bay City, et al., No. 2:02-cv-10318 (E.D. Mich. Dec. 24, 2002). Plaintiff alleged unlawful search and seizure. Amended Complaint at 3–6, Causey v. City of Bay City, et al., No. 2:02-cv-10318 (E.D. Mich. Jan. 9, 2002). The City moved for summary judgment, which the Court granted in part and denied in part. Opinion and Order at 37, Causey v. City of Bay City, et al., No. 2:02-cv-10318 (E.D. Mich. Jan. 7, 2005). The Court dismissed Pletzke from the lawsuit. *Id.* Plaintiff settled with the City. *See* Order of Dismissal, Causey v. City of Bay City, et al., No. 2:02-cv-10318 (E.D. Mich. Jan. 4, 2007).

After the lawsuit concluded, Plaintiff continued to run his company, which bought and sold houses. Dkt. No. 26-2, pg. 4 (Pg. ID 535). In 2015, he liquidated the company's assets in order to lease the Prime Event Center ("Event Center"); he also bought a bar called Trix's (Plaintiff later changed the name to Northern Lights). *Id.* On March 1, 2016, Plaintiff entered into a lease with Dore Real Estate, LLC to lease the Event Center in Bay City, Michigan. Dkt. No. 1-1. Plaintiff had a lease purchase agreement with Mr. Art Dore in which Plaintiff planned to buy the Event Center from Mr. Dore for $300,000. Dkt. No. 26-2, pg. 6 (Pg. ID 537).

Prior to Plaintiff, Mr. Stephen Coppler ran events at the Event Center for Mr. Dore. Dkt. No. 26-5, pg. 10 (Pg. ID 610). Plaintiff then took over the management and control of the Event Center. Dkt. No. 1, at pg. 4 (Pg. ID 4). Plaintiff alleges that after he took control of the Event Center, Defendants began to pressure Dore Real Estate, LLC to end its contract with Plaintiff. *Id.*

Mr. John Roszatycki owns the bowling alley next to the Event Center. Dkt. No. 23-3, pg. 8–9 (Pg. ID 276–77). On the night of March 5, 2016, Mr. Roszatycki's staff contacted him and told him that there was a huge fight outside, in front of the bowling alley. *Id.* at pg. 14 (Pg. ID 282); *see* Dkt. No. 23-4, pg. 9 (Pg. ID 312). This prompted Roszatycki to call Mr. Finn. *Id.* On March 11, 2016, Mr. Roszatycki met with Mr. Finn, Mr. Pletzke, and Mr. Stamiris (the commissioner from Roszatycki's ward). *Id.* at pg. 18 (Pg. ID 321). At the meeting with Mr. Pletzke, Roszatycki told Pletzke that there was an extremely violent fight outside of the Event Center. *Id.* at pg. 20 (Pg. ID 288). Roszatycki claims that he also told Mr. Pletzke that the fight appeared to be gang related based on what his employees told him. *Id.* However, Mr. Finn's memorandum of the meeting does not say that Roszatycki mentioned anything about gangs. *See* Dkt. No. 22-6. Roszatycki also expressed concern about an upcoming event on March 19, 2016 at the Event Center. Dkt. No. 23-6, pg. 2 (Pg. ID 369). Roszatycki asked if the City

could contact the owner of the Event Center, Mr. Art Dore to alert Mr. Dore to his concerns. *Id.*

Mr. Finn communicated Roszatycki's concern to Public Safety, Mr. Pletzke. Dkt. No. 23-4, pg. 20 (Pg. ID 323). Mr. Pletzke instructed Sergeant Potts and Officer Chad Warren to look into the March 19, 2016 event for potential violence. Sergeant Potts then instructed Officer Warren to investigate the Event Center through Facebook. Dkt. No. 23-7, pg. 12 (Pg. ID 384). Officer Warren found that members of two rival gangs were promoting and planning on attending the event. *Id.* at pg. 17 (Pg. ID 15). On March 11, 2017, Finn and Pletzke conducted a conference call with Mr. Art Dore. Dkt. No. 23-6, pg. 2 (Pg. ID 369). Sergeant Potts entered the phone call about halfway through in order to provide the information that Officer Warren gathered, which indicated that two rival gangs were planning to attend the March 19, 2016 event. *Id.* Mr. Pletze and Sergeant Potts shared their concerns with Dore that the event had a high potential for becoming a major disruption. *Id.* at pg. 3 (Pg. ID 370). On that same day—March 11, 2016, Mr. Dore cancelled the lease contract that Dore Real Estate, LLC had with Plaintiff. Dkt. No. 26-2, pg. 6 (Pg. ID 537). Mr. Dore maintains that he cancelled Plaintiff's contract because "[Plaintiff] didn't pay rent." Dkt. No. 23-11, pg. 13 (Pg. ID 493). However, Mr. Dore called Plaintiff on the day of March 11, 2016 and said, "The police department, the city manager, everybody is on my ass.

They're saying that some gangs from Saginaw are promoting the event starting tomorrow and they're scared shitless that something is going to happen. . . . [s]o the deal is off." *Id.* at pg. 12 (Pg. ID 492). Shortly after Mr. Dore left this message, he instructed Plaintiff to call Mr. Pletzke and get approval from the City regarding his lease with Mr. Dore. Dkt. No. 26-2, at pg. 8 (Pg. ID 539). If Plaintiff could get approval from the City, then Mr. Dore would reinstate the contract. *Id.*

On March 16, 2016, Plaintiff met with Mr. Pletzke and Mr. Stephen Coppler. *Id.* at pg. 9 (Pg. ID 540). At this meeting, Plaintiff asked Mr. Pletzke what was going on regarding the Event Center. *Id.* One of the first things that Mr. Pletzke said to Plaintiff was that he did not want another lawsuit. *Id.* at pg. 19 (Pg. ID 550). Mr. Pletzke also told Plaintiff that some gangs were doing promoting at the events taking place at the Event Center. *Id.* at pg. 9 (Pg. ID 540). Plaintiff also alleges that Pletzke told Plaintiff that he (Plaintiff) was "doing bad business," and he (Pletzke) was going to "shut [Plaintiff] down over at Trix's." *Id.* This meeting lasted about ten minutes. *Id.*

After the initial meeting with Pletzke, Plaintiff tried to get another meeting with Pletzke in order to secure his approval so that Plaintiff could reinstate his contract with Mr. Dore. *Id.* at pg. 11 (Pg. ID 542). Plaintiff called and texted Pletzke several times; Pletzke did not return any of these calls or texts. *Id.* Plaintiff saw Pletzke at Jimmy John's not long after his phone calls and texts, and Pletzke

acknowledged his receipt of Plaintiff's communications. *Id.* Pletzke told Plaintiff that he would get back with Plaintiff, but he never did. *Id.* Plaintiff and his wife met with Mr. Art Dore, Mr. Jason Dore (who handled the finances for Dore Real Estate, LLC), and Mr. Stephen Coppler at some point after Plaintiff's initial meeting with Pletzke. *Id.* at pg. 18 (Pg. ID 549). At this meeting, Mr. Dore explained to Plaintiff that the City had a problem with the "black acts" that were coming to perform at the Event Center. *Id.* Plaintiff never heard from Pletzke, and his contract with Mr. Dore remained terminated. After Dore Real Estate terminated its lease with Plaintiff, Mr. Stephen Coppler took over the management of the Event Center. Dkt. No. 26-5, pg. 10 (Pg. ID 610). Plaintiff now lives in Alpharetta, Georgia, where he moved to find new opportunity. *Id.* at pg. 3 (Pg. ID 534). Plaintiff maintains that he was "basically driven out of town by [the] Bay City Police Department." *Id.* at pg. 5 (Pg. ID 536).

On July 25, 2016, Plaintiff filed a complaint against Defendants alleging violations of Equal Protection and retaliation. Dkt. No. 1. Defendants filed this Motion for Summary Judgment on August 11, 2017. Dkt. No. 23. Plaintiff opposed the Motion September 15, 2017. Dkt. No. 26. Defendants then filed a reply on October 3, 2017.

# III. Legal Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

# IV. Discussion

## Claims under 42 U.S.C. § 1981

Under 42 U.S.C. § 1981, "[a]ll persons . . . have the same right . . . to make and enforce contracts . . . includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (2012). The Sixth

Circuit holds that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Plaintiff concedes that he does not have a cause of action against Defendants under 42 U.S.C. § 1981. Dkt. No 26, pg. 14 (Pg. ID 516).

For these reasons, this Court will grant Defendants' Motion for Summary Judgment in regards to Plaintiff's claims under 42 U.S.C. § 1981. The Court will therefore only consider Plaintiff's Equal Protection and retaliation claims under 42 U.S.C. § 1983.

## Claims under 42 U.S.C. § 1983 Against the City of Bay City

Plaintiff alleges that the City of Bay City mandated a violation of his 14th Amendment constitutional rights. Dkt. No. 1, pg. 8 (Pg. ID 8). He also claims the City acted with deliberate indifference in failing to train its employees and policymakers, which caused the violations of his constitutional rights. *Id.*

To prevail in a § 1983 claim against a municipality, one "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff must show one of the following to prove this claim:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) *the existence of a policy of inadequate training or supervision*; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

To succeed on a failure to train or supervise claim in the Sixth Circuit, Plaintiff must prove the following:

> (1) the training or supervision was inadequate for the tasks performed;
> (2) the inadequacy was the result of the municipality's deliberate indifference; and
> (3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 Fed. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). There are two ways to

demonstrate deliberate indifference. Plaintiff could "show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). Or, Plaintiff could show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . ." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).

In this case, the Plaintiff claims that the City failed to adequately supervise and train its employees and policymakers. So the Plaintiff must demonstrate: (1) failure to train or supervise, (2) deliberate indifferentness, and (3) relatedness. *See Ellis ex rel. Pendergrass*, 455 F.3d at 700.

Plaintiff's complaint does not explicitly state any specific act he believes constitutes a failure to train or supervise. Dkt. No. 1, pg. 8 (Pg. ID 8). From the record, it appears that the Plaintiff attempts to make a showing of failure to train or supervise by pointing to the City officials' failure to inform Plaintiff of Roszatycki's complaint and the potential violence at the Event Center. Alternatively, Plaintiff appears to be claiming that there was a failure to train and supervise because City

officials allegedly violated his constitutional rights. Therefore, the City did not adequately train its officials not to violate an individual's constitutional rights.

The Court will consider the information from the record that could lead a reasonable juror to infer that the City failed to adequately train and supervise. Although there was an alleged violent fight outside of the Event Center on March 5, 2016, no one from the City contacted Plaintiff about Roszatycki's complaint. Dkt. No. 26-2, Pg. 33 (Pg. ID 546). Plaintiff did not learn of Roszatycki's complaint until he read Roszatycki's deposition. *Id.* Mr. Finn testified that he never contacted Plaintiff to find out what happened on March 5, 2016. Dkt. No. 23-4, pg. 13 (Pg. ID 316). Mr. Finn stated that it was not "protocol" to make contact with Plaintiff. *Id.* at pg. 19 (Pg. ID 322). Because it involved a potential public safety issue, he turned it over to Public Safety. *Id.* Mr. Pletzke testified that he never called Plaintiff while he was investigating the Event Center nor at any other time. *See* Dkt. No. 23-5, pg. 13 (Pg. ID 365). Pletzke said that "[he] didn't think it was important" to call Plaintiff and ask him what he was doing to ensure the public safety. *Id.* at pg. 14 (Pg. ID 366). Pletzke stated that he deals with the public safety, so he was focused on finding out who was attending the event. *Id.* at pg. 13–14 (Pg. ID 365–66). Based on these facts, a reasonable juror could conclude that the City gives inadequate notice of public safety issues to the relevant parties. A reasonable juror could also infer that it is insufficient to fail to warn managers of commercial property of a potential public

safety issue at the property. Therefore, the Court holds that a reasonable juror could infer that the City of Bay City fails to adequately train or supervise its officials on the appropriate protocol to take when investigating potential violence at commercial venues.

Second, Plaintiff must show deliberate indifference. Plaintiff does not present evidence of prior instances of unconstitutional conduct. Plaintiff also does not show a single violation of federal rights with a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.

Third, the Plaintiff must show that the inadequacy was closely related to or actually caused the injury. Plaintiff also cannot meet this element. Plaintiff does not specifically allege or present facts that the failure to tell him about the March 5, 2016 incident caused or was closely related to Dore terminating his contract. The record just reflects Plaintiff's surprise that Mr. Roszatycki did not inform him of the incident himself. Dkt. No. 26-2, pg. 33 (Pg. ID 564). Plaintiff also testified that before he owned his other bar, Trix's, everyone came to him if there were any issues. *Id.* at pg. 34 (Pg. ID 565). However, Plaintiff does not purport to state that the failure to inform him led to Mr. Dore terminating his contract.

In conclusion, the Court finds that there is not an issue of material fact regarding whether the City of Bay City failed to properly supervise or train its

employees and policymakers. Therefore the City is entitled to summary judgment on the § 1983 claim against it.

**Claims under 42 U.S.C. § 1983 Against the Individual Defendants**

### Michael Cecchini

The City of Bay City argues that Michael Cecchini is entitled to summary judgment because he "had . . . little involvement in the underlying factual development of this case." Dkt. No. 27, pg. 6 (Pg. ID 669). The Court agrees.

Plaintiff brings his suit against several defendants, including Michael Cecchini. Mr. Cecchini is Bay City's Public Safety Director. Dkt. No. 23-4, pg. 18 (Pg. ID 321). However, during the period of time that Plaintiff claims Defendants violated his constitutional rights, Mr. Cecchini was on vacation. *Id.* Therefore, Tom Pletzke filled in as the acting Deputy Public Safety Director, with Cecchini still serving as Pletzke's boss. *Id.* Plaintiff therefore appears to be bringing his suit against Mr. Cecchini under a theory of respondeat superior liability. For Cecchini to be liable, Plaintiff has "to prove that [he] did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour v. Univ. of Tenn.*, 59 F.3d 199, 206 (6th Cir. 1998). Plaintiff's complaint is devoid of any specific factual allegations against Mr. Cecchini and only mentions Mr. Cecchini in the case caption. No additional evidence in the record mentions Mr. Cecchini in

any material way. Therefore, Defendant Michael Cecchini is entitled to summary judgment.

### Remaining Individual Defendants Mr. Finn and Mr. Pletzke

### Race-Based Equal Protection Claim

Plaintiff claims that the remaining individual defendants, Finn and Pletzke, treated him adversely when compared to others who have managed the Prime Event Center because of his race as an African American. Dkt. No. 1, pg. 7 (Pg. ID 7). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (quoting *Henry v. Metro. Sewer Dist.*, 992 F.2d 332, 341 (6th Cir. 1990)). An Equal Protection claim must also show that differential treatment resulted from discriminatory intent. *See Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 972 (E.D. Mich. 2016). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment . . . targets a suspect class . . . .'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir.

2006)). Similarly situated means that "a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. Of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2011) (quoting *U.S. v. Green*, 654 F.3d, 637, 650 (6th Cir. 2011)).

Plaintiff must identify a non-black manager/lessee of the Event Center or other commercial premises whose commercial premises the City did not investigate after getting complaints. Defendants claim that Plaintiff's claim must fail because he cannot point to a similarly situated individual who Defendants treated more favorably than Plaintiff. Dkt. No. 23, pg. 18 (Pg. ID 246). Plaintiff claims that Mr. Stephen Coppler, a Caucasian who has operated the Event Center both before and after Plaintiff, is a similarly situated individual. Dkt. No. 26, pg. 3 (Pg. ID 505). Coppler hosted a number of events at the Event Center that were similar to Plaintiff's events, such as music concerts, boxing matches, and cage fights. Dkt. No. 26-5, pg. 11–12 (Pg. ID 611–12). These events occasionally drew violent crowds that broke out in fighting. *See id.* at pg. 34 (Pg. ID 634). However, Defendants never contacted Coppler with concerns about the events taking place at the Event Center. *Id.* There is no evidence in the record that Defendants ever investigated any of the upcoming events that took place under Coppler's management, or called Dore. Dkt. No. 26 at pg. 4 (Pg. ID 506).

The Court finds that neither Coppler nor anyone else in the record is a similarly situated individual to Plaintiff such that there could be a genuine dispute

of material fact regarding Plaintiff's Equal Protection claim. Coppler was a lessor and manager of the Events Center, like Plaintiff, who hosted events that would sometimes end with violence. However, Defendants started to investigate and contacted Mr. Dore because of Mr. Roszatycki's concern about the upcoming event at the Event Center on March 19, 2016, and his insistence that someone from the City contact Dore. Dkt. No. 23-6, pg. 2 (Pg. ID 369). The record does not show that any of the events Coppler hosted resulted in a phone call from Mr. Roszatycki or any other concerned citizen who feared violence at specific future event. Nor does the record reflect any phone calls or meetings with concerned citizens in which the citizen requested that the police investigate and/or contact Mr. Art Dore.

Because Plaintiff cannot point to a similarly situated individual who Defendants treated more favorably, Defendants are entitled to summary judgment on this claim.

### *Retaliation*

In the alternative, Plaintiff claims that Defendants targeted and treated him differently because of his earlier lawsuit with the City of Bay City. Dkt. No. 1, pg. 7 (Pg. ID 7).

In this claim, Plaintiff appears to be proceeding on a class-of-one theory. To sustain an equal protection claim brought by a class-of-one, a Plaintiff must show:

(1) "disparate treatment from similarly situated individuals" and (2) "that the government actors had no rational basis for the difference." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2015). Alternatively, a Plaintiff must show "that the challenged government action was motivated by animus or ill-will." *Id.*

As stated above, no evidence in the record points to a similarly situated individual to Plaintiff. Therefore, Plaintiff must show that the challenged government action was motivated by animus or ill-will.

Plaintiff testified that he met with Mr. Pletzke and Mr. Stephen Coppler on March 16, 2016. Dkt. No. 26-2, pg. 9 (Pg. ID 540). At this meeting, Plaintiff asked Mr. Pletzke what was going on regarding the Event Center. *Id.* One of the first things that Mr. Pletzke said to Plaintiff was that he did not want another lawsuit. *Id.* at pg. 19 (Pg. ID 550). Pletzke denies saying this. Dkt. No. 23-5, pg. 3 (Pg. ID 355). Plaintiff also testified that during this same meeting, Pletzke said he wanted to run Plaintiff out of town. Dkt. No 26-2, pg. 9 (Pg. ID 540). Pletzke denies he said that he wanted to run Plaintiff out of town. Dkt. No. 23-5, pg. 3 (Pg. ID 355). In a voicemail to Plaintiff on March 11, 2016, Mr. Art Dore stated, "The police department, the city manager, everybody is on my ass. They're saying that some gangs from Saginaw are promoting the event starting tomorrow and they're scared shitless that something is going to happen. . . . [s]o the deal is off." Dkt. No 26-2,

pg. 12 (Pg. ID 492). Mr. Pletzke was the Acting Chief of Public Safety at the time Mr. Dore sent this message. Pletzke also had a conference call with Mr. Dore on March 11, 2016. Dkt. No. 23-6, pg. 2 (Pg. ID 369). Therefore, a reasonable juror could infer that Mr. Dore was referring, at least in part, to Mr. Pletzke as being one of the people pressuring him to terminate the contract with Plaintiff. A reasonable juror could also find that Mr. Pletzke treated Plaintiff adversely because of animus about the prior lawsuit that he filed against the City and Pletzke. Therefore, summary judgment on this issue is improper as against Mr. Pletzke.

This same evidence does not exist against Defendant Mr. Finn. For Mr. Finn to be held liable, Plaintiff has "to prove that [he] did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour v. Univ. of Tenn.*, 59 F.3d 199, 206 (6th Cir. 1998). Here, the record does not contain facts suggesting Mr. Finn's had animus towards Plaintiff because of Plaintiff's prior lawsuit.

The Court holds that there exists a genuine dispute of material fact concerning whether Defendant Pletzke pressured Mr. Dore to terminate the lease based on animus over Plaintiff's prior lawsuit. Therefore, the Court rules in Plaintiff's favor on this claim and denies summary judgment to Mr. Pletzke on Plaintiff's retaliation claim.

*Qualified Immunity*

The individual defendants assert that this Court should grant them qualified immunity.

There is a two-part test to determine if a defendant is entitled to qualified immunity. *Sumpter v. Wayne County*, 868 F.3d 473, 480 (6th Cir. 2017). Courts ask "whether the facts alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the incident." *Id.* To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. Of Educ. Of Harlan Cty.*, 118 F.3d 507, 515 6th Cir. 1997)). "However, 'a case directly on point' is not required to establish that the law is clearly established." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650–51 (6th Cir. 2015). "[S]ome violations of constitutional rights are so obvious that a materially similar case would be unnecessary." *Id.* at 651 (quoting *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010)).

As to Defendant Cecchini, the Court holds that neither element one or two has been met. As this Court stated previously, the record does not establish that

Cecchini had any material involvement in the incidents giving rise to this case. Therefore, there can be no facts that establish that Cecchini violated Plaintiff's constitutional rights. In conclusion, this Court holds that Mr. Cecchini is entitled to qualified immunity.

Defendant Mr. Finn is entitled to qualified immunity as well. The record does not establish that Mr. Finn violated Plaintiff's Equal Protection rights. This is because the record does not show a similarly situated individual to Plaintiff. The record also does not produce evidence suggesting Mr. Finn retaliated against Plaintiff for filing his prior lawsuit. Therefore, Mr. Finn is entitled to qualified immunity from Plaintiff's claims.

Defendant Mr. Pletzke is entitled to qualified immunity in relation to Plaintiff's race-based Equal Protection claim. Like Defendant Mr. Finn, the record does not establish that there was a similarly situated individual to Plaintiff, which is required to establish this constitutional violation. However, Mr. Pletzke is not entitled to summary judgment on the retaliation claim. The allegation of retaliation in this case, if proven, would constitute an obvious violation of Plaintiff's Equal Protection rights which a government official should be aware of. In conclusion, Mr. Pletzke is not entitled to qualified immunity in relation to Plaintiff's Equal Protection claim based on retaliation.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. Defendants are entitled to summary judgment on Plaintiff's § 1981 claims against them. The City of Bay City, Mr. Michael Cecchini, and Mr. Richard Finn are entitled to summary judgment on all claims against them. Mr. Thomas Pletzke is entitled to summary judgment on Plaintiff's Equal Protection claim. Summary judgment is denied for Mr. Pletzke as to Plaintiff's retaliation claim against him.

**IT IS SO ORDERED.**

/s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICTJUDGE

Dated:  November 1, 2017